UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 27 2012

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

GFI MORTGAGE BANKERS, INC.,

                Defendant.

12 Civ. 02502 (KBF) (FM)

## CONSENT ORDER

WHEREAS on April 2, 2012, the United States filed its Complaint (the "Complaint") in this matter, alleging that the Defendant GFI Mortgage Bankers, Inc. ("GFI") has engaged in a pattern or practice of conduct in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, by discriminating on the basis of race and national origin in the extension of residential credit and in the making of residential real estate-related loans;

WHEREAS on June 1, 2012, GFI filed a motion to dismiss the Complaint arguing that it has no legal liability for any of the conduct alleged in the Complaint, which motion remains <u>sub judice</u> with the Court;

WHEREAS the United States filed a brief opposing GFI's motion to dismiss the Complaint and the parties initiated discovery on June 12, 2012;

WHEREAS on August 17, 2012, the Court entered an Order scheduling oral argument on the motion to dismiss that stated: "The Court is skeptical of [GFI's] argument that neither the

1

Fair Housing Act nor the Equal Credit Opportunity Act permits disparate impact claims under

Smith v. City of Jackson, 544 U.S. 228 (2005)"; and

WHEREAS the parties now jointly submit this Consent Order for the approval of and

entry by the Court, to fully resolve the claims asserted in the Complaint;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345, 42

U.S.C. § 3614, and 15 U.S.C. § 1691e(h).

2.      GFI is a mortgage bank with its principal place of business in New York City,

New York, and is currently licensed to conduct business in five states.  It has operated as a

correspondent lender, with the number of first-lien, owner-occupied home mortgage loans it

originated increasing from 974 in 2005 to 2,270 in 2009.  From 2005 to date, most of its offices

have been located in, and the majority of its mortgage loans have been originated in, New York

and New Jersey.

3.      Venue is appropriate pursuant to 28 U.S.C. § 1391, because GFI, the defendant in

this action, conducts business in this district and its principal place of business is located in this

district.

### FACTUAL STIPULATIONS

4.      GFI agrees, admits, and accepts responsibility for the following facts, as alleged

in the Complaint:

a.      In June of 2007, the United States Department of Housing and Urban

Development ("HUD") began an investigation of GFI for possible discrimination in

residential mortgage lending against African-American and Hispanic borrowers.  In

2

January of 2010, HUD concluded that there was sufficient evidence that discriminatory lending practices had occurred at GFI in 2005 and 2006 to refer the matter to the Department of Justice for appropriate action.

       b.      From 2005 through at least 2009, a statistical analysis of the available data shows that GFI charged higher note interest rates on loans it originated to qualified African-American and Hispanic borrowers than it did to non-Hispanic white borrowers. Measured on a yearly basis, those note interest rate disparities ranged between 19 and 41 basis points higher for African-American borrowers and between 20 and 23 basis points higher for Hispanic borrowers, when compared to similarly-situated non-Hispanic white borrowers.[1]  These interest rate disparities between non-Hispanic white borrowers on the one hand, and African-American and Hispanic borrowers on the other, are statistically significant, and they cannot be explained by objective credit characteristics of the borrowers or loan product features.

       c.      From 2005 through at least 2009, a statistical analysis of the available data shows that GFI charged higher fees on loans it originated to the average African-American and Hispanic borrower than it did to the average non-Hispanic white borrower. On average, measured on a yearly basis, those fee disparities ranged between 73 and 105 basis points higher for African-American borrowers and between 27 and 56 basis points higher for Hispanic borrowers, when compared to non-Hispanic white borrowers.  These fee disparities between non-Hispanic white borrowers on the one hand, and African-American and Hispanic borrowers on the other, are statistically significant, and they

---

[1] A basis point is 1/100 of a percentage point, with 100 basis points equaling 1%.

cannot be explained by objective credit characteristics of the borrowers or loan product features.

        d.     From 2005 through at least 2009, GFI had policies and practices that allowed its loan officers to make subjective and unguided pricing adjustments to home mortgage loans that were not based on a borrower's objective credit characteristics. GFI's policies and practices permitted loan officers to exercise discretion, based on factors other than a borrower's creditworthiness, to increase or decrease interest rates on loans offered to any borrower from par or rate sheet prices, to assign fees to borrowers in connection with loan originations, and to select loan products to offer borrowers.

        e.     From 2005 through at least 2009, GFI provided a financial incentive to its loan officers to charge higher interest rates and fees to borrowers generally by including as part of their compensation a share of any higher interest rates and fees the loan officers could obtain from a borrower.

        f.     From 2005 through at least 2009, GFI did not have fair lending training and monitoring programs in place to prevent the pricing disparities described above.

### INJUNCTIVE RELIEF

        5.     Unless otherwise stated herein, the remedial provisions of this Order shall be implemented not later than sixty (60) days after the effective date of this Order. The effective date of this Order is the date upon which it is approved and entered by the Court.

**A.**    **Fair Lending Policies and Procedures**

        6.     GFI, including all of its officers, employees, agents, assignees, successors in interest, and all those in active concert or participation with any of them, is hereby enjoined from the adoption, performance, or implementation of any policy, practice, or act that results in

4

discrimination on the basis of race or national origin in violation of the FHA or of the ECOA in the origination or pricing of residential mortgage loans. Nothing in this Order will require GFI to require loans to be originated or priced based upon the race or national origin of the borrower or prospective borrower.

7.     Consistent with Regulation Z, 12 C.F.R. § 1026.36(d), GFI shall prohibit, for all loans secured by residential real estate originated in its name, its employees and agents from receiving, directly or indirectly, any form of compensation in an amount that is based on any of the terms or conditions of a loan secured by residential real estate, including the annual percentage rate of interest charged to the borrower or the amount by which it varies from the par rate. This prohibition shall not limit compensation that is based on the principal amount of a loan, provided the compensation is based on a fixed percentage of the principal; however, such compensation may be subject to a minimum or maximum dollar amount. This prohibition also shall not limit GFI from allowing a borrower to finance, at the option of the borrower, including through additional principal or higher interest rate, any origination fees or costs, so long as such fees or costs do not vary based on the terms of the loan (other than the amount of the principal) or the borrower's decision about whether to finance such fees or costs. No term of this Consent Order will be interpreted to prevent GFI employees and agents from receiving compensation allowed by 12 C.F.R. § 1026.36(d) or to prevent GFI from complying with any federal statutory or regulatory requirement concerning employee compensation or loan pricing.

8.     Subject to the approval of the United States as set forth in Paragraph 16, GFI shall adopt specific policies and procedures designed to avoid unlawful discrimination by GFI based on a borrower's race or national origin in the determination of interest rates, both note rate and annual percentage rate, on loans secured by residential real estate. To the same end, GFI shall

also adopt a standard schedule of fees and costs it charges and retains for itself or pays to its employees or agents, based on either a fixed dollar amount or a percentage of the loan principal amount, including loan origination fees/points and discount fees/points. To the extent GFI allows discretion to its employees and agents in the setting of interest rates, fees, and costs on an individual loan, GFI must: (a) place a narrow objective limit on the amount of pricing discretion its loan officers (or employees functioning in a similar capacity) and agents have, measured in basis points for interest rates and either dollar amounts or basis points for fees; (b) in the event an applicant elects to pay discount points, document the specific interest rate reduction that results from the payment of such discount points; (c) in the event a loan officer proposes a loan with an interest rate that exceeds his/her discretion or fees that vary from the standard schedule, require him/her to provide written nondiscriminatory justification for the pricing deviation and require approval for the loan by a designated higher-level employee; and (d) maintain in individual loan files any rate sheet relied upon, the search parameters and criteria relied upon in obtaining loan product and pricing options from any automated underwriting system (including screen shots), and the reasons for any pricing deviations outside of the fixed limits. GFI shall also adopt policies and procedures that require its employees and agents, in the process of an applicant's selection of a loan product, to explain the benefits and consequences of each loan product discussed.

      9.      GFI shall require a manager at each of its branch offices, under the supervision of a designated senior official, to review and ensure compliance with the requirements of Paragraph 8, including the retention of all documents related to those requirements for the duration of this Order. GFI shall not approve any loan application, or finalize an origination of any loan, that is not submitted in compliance with these requirements.

6

10.     GFI shall post and prominently display in each location where it receives in-person loan applications a notice of nondiscrimination in the form of Appendix A.

11.     For all loans secured by residential real estate originated in its name, GFI shall require its employees or agents to provide the following disclosure to applicants, to the extent not inconsistent with applicable law: (a) the par interest rate used to price the loan; (b) the full amount of all fees and costs GFI charges; (c) a statement whether the applicant/borrower can negotiate the interest rate, fees, or costs; and (d) a non-discrimination notice that provides substantially the same information as set out in Appendix A. Such disclosure shall be in writing, signed by the employee or agent and the applicant/borrower and retained by GFI in the loan file. This disclosure shall be made and executed as early as practicable in the loan application process.

**B.      Fair Lending Monitoring Program**

12.     GFI shall develop a fair lending monitoring program designed to ensure compliance with this Order, the FHA, and the ECOA. The program shall be designed to monitor, no less frequently than quarterly, loans originated by GFI in its own name secured by residential real estate for potential unexplained disparities by a borrower's race or national origin in the pricing of its residential loan products. At a minimum, GFI shall monitor for disparities in note interest rates, annual percentage rates of interest, and any fees, however denominated, that GFI charges and retains for itself or pays to its employees. This monitoring shall include, but not be limited to, analyses designed to detect statistically significant unexplained disparities in the pricing of its residential loan products by race or national origin with respect to all loans secured by residential real estate GFI originates in its own name. This monitoring program shall review loan originations at the employee (when sufficient loan volume exists to obtain statistically significant results), branch, and company-wide levels, and shall be supervised by a designated

7

senior GFI manager, who shall provide a comprehensive quarterly report to GFI's Board of Directors for review and approval not later than 60 days after the end of each quarter.

13.     In the event that any such review discloses statistically significant (at the 95% confidence level) disparities at any level – employee, branch or company-wide – GFI must promptly attempt to determine the reason(s) for those disparities and must promptly take corrective action to address significant disparities unrelated to objective borrower credit characteristics or loan features that were caused by a policy or practice of GFI, including one that allows pricing discretion to its loan officers, and not justified by a specified legitimate business necessity.  Corrective action must include, but is not limited to, where warranted: (a) financial remediation for borrowers; (b) modifications to GFI's pricing policies and/or monitoring programs; (c) training, discipline, or termination of employees or agents; and (d) financial penalties to or additional restrictions on pricing discretion for a branch office or loan officer. GFI shall document any such corrective actions taken and provide the quarterly reviews and any documentation and analysis relating thereto to the United States on a quarterly basis.  If the United States raises any objections to GFI's determinations or remedial actions, the parties shall confer to consider appropriate steps to address the concerns raised by the United States' review. If the parties are unable to come to an agreement regarding such objections, any party may bring the dispute to this Court for resolution.

**C.     Fair Lending Training Program**

14.     No later than 60 days after GFI's new loan policies are approved by the United States or the Court, as provided in Paragraph 16, GFI must provide live (including by webinar or videoconferencing) equal credit opportunity training to its management officials, loan officers, and any other employees or agents who participate in the origination of loans secured by

8

residential real estate ("covered employees"). This training shall be provided by an independent third party, selected by GFI subject to approval of the United States, with the costs to be paid by GFI. This training must provide to each participant: (a) a copy of this Order and the new loan policies adopted pursuant to it; (b) training on the terms of this Order, the new loan policies, the requirements of the FHA, the ECOA, and his or her responsibilities under each; and (c) an opportunity to ask questions of, and receive answers from, the instructor. During the term of this Order, GFI must provide this annual fair lending training to covered employees with respect to his or her responsibilities and obligations under the FHA, the ECOA, and this Order.

15.    GFI must secure from each covered employee a signed statement acknowledging that he or she has received a copy of this Order and the loan policies and has completed the initial fair lending training. These statements must be substantially in the form of Appendix B (Acknowledgment) and Appendix C (Fair Lending Training). During the term of the Order, each new employee or agent whose responsibilities include those set forth in Paragraph 14 must be provided a copy of this Order and given an opportunity to have any questions answered, and must sign the acknowledgment form statement (Appendix B) no later than 10 days of beginning his or her employment in that position.

**D.     Review of GFI's Revised Lending, Monitoring, and Training Policies**

16.    GFI must provide a copy of the fair lending policies and the fair lending monitoring policies it proposes to the United States no later than 60 days from the effective date of this Order. The United States must raise any objections to the policies no later than 45 days from receipt of them. If the United States raises any objections, the parties must confer to resolve their differences. In the event they are unable to do so, either party may bring the dispute to this Court for resolution.

E.    **Staff**

17.    Within 60 days of the effective date of this Order, GFI shall employ or designate a current senior-level employee to serve as a Director of Compliance (or similar title), whose primary responsibilities shall include, but shall not be limited to, overseeing its compliance with the FHA, ECOA, and the provisions of this Order.  The Director of Compliance shall be a member of GFI's senior management.  The Director shall oversee the development and implementation of mandatory fair lending training of all lending branch personnel with significant involvement in residential lending (both existing and new employees), be responsible for development and implementation of GFI's fair lending monitoring program, participate in the creation of fair lending policies and practices, be responsible for addressing all fair lending complaints individuals direct to or about GFI, and report directly to GFI's Board of Directors on these subject matters at least quarterly.  GFI shall notify the Department of Justice and provide it an opportunity to review the qualifications of this individual in advance.

## MONETARY RELIEF

18.    In full satisfaction of the United States' claims for monetary damages for aggrieved persons and for a civil penalty, GFI shall pay a total of $3,555,000 in accordance with the schedule set forth below:

> a.    One payment of $1,305,000 within thirty days of the effective date of this Order;
>
> b.    One payment of $562,500 within one year and thirty days of the effective date of this Order; and
>
> c.    Six payments of $281,250 every six months beginning one year, six months and thirty days after the effective date of this Order.

These payments shall be allocated as follows: $3.5 million is designated as monetary damages for aggrieved persons, and $55,000 shall be a civil penalty to the United States to vindicate the

10

public interest. These payments, together with the costs of fair lending training and administration of the Settlement Fund described in Paragraphs 21-27, constitute the only payments to be made by GFI in settlement of this action, except as provided in Paragraph 29, and no interest shall be charged on the remaining balance as long as each payment has been made in full as scheduled. In the event that GFI fails to make any payment referenced above in full and on time, interest at the statutory rate shall be charged on the entire remaining balance until the final payment is made.

19.     GFI shall deposit each payment, up to $3,500,000, in an interest-bearing escrow account (the "Settlement Fund"), title to which shall specify that it is "for the benefit of allegedly aggrieved persons pursuant to Order of the Court in *United States v. GFI Mortgage Bankers, Inc.*" GFI shall provide written verification of each deposit to the United States within 5 days of each deposit. Any interest that accrues on the account shall become part of the Settlement Fund and be utilized and disposed of as set forth herein.

20.     On the final payment date fixed by Paragraph 18, GFI shall pay a total of $55,000 to the United States as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

### ADMINISTRATION OF SETTLEMENT FUND

21.     Within 30 days of entry of the Order, GFI shall identify to the United States a proposed Settlement Administrator ("Administrator"). Within 30 days of obtaining the United States' consent to the selected Administrator, GFI shall execute a contract with the Administrator to conduct the activities set forth in Paragraphs 21-27 and requiring the Administrator to comply with the provisions of this Order as applicable to the Administrator. GFI shall obtain the United

11

States' consent to the contract prior to its execution.  GFI shall bear all reasonable costs and expenses of the Administrator.  The Administrator's contract shall require it to work cooperatively with the United States in the conduct of its activities, including reporting regularly and providing all reasonably requested information to the United States.  GFI shall allow the Administrator access to relevant mortgage loan files and borrower contact information for the purposes of accomplishing its duties under the Order.  The contract shall require the Administrator to comply with all confidentiality and privacy restrictions applicable to the party who supplies the information and data to the Administrator.

22.     In the event the United States has reason to believe that the Administrator is not materially complying with the terms of its contract with GFI, the United States and GFI shall meet and confer for the purpose of mutually agreeing upon a course of action to effect the Administrator's material compliance with its contract.  In the event that the United States and GFI are unable to agree upon a course of action to effect the Administrator's material compliance with its contract, the parties may present the matter to the Court.

23.     The United States shall provide a list of allegedly aggrieved persons to the Administrator within 60 days of execution of its contract with GFI.  Pursuant to its contract, the Administrator shall make its best efforts, using all reasonable methods regularly used by companies that administer litigation and government enforcement settlement funds, to locate each identified allegedly aggrieved person and obtain such information as the United States reasonably considers necessary from each.  The Administrator's contract shall require the Administrator to complete this responsibility within a period of 4 months from the date the United States provides this list, subject to an extension of time as provided by Paragraph 26.  The

Administrator's contract shall require it to establish cost-free means for allegedly aggrieved persons to contact it, such as email and a toll-free telephone number.

24.     The United States shall specify the amount each allegedly aggrieved person located by the Administrator pursuant to Paragraph 23 shall receive from the initial amount deposited into Settlement Fund no later than 60 days after the Administrator's deadline for locating allegedly aggrieved persons has passed.  The United States shall provide the compensation list to the Administrator.  Within thirty days of each subsequent deposit into the Settlement Fund, the United States shall provide a list to the Administrator for the disbursement of those funds.

25.     The Administrator shall send releases, as set forth in Appendix D ("Release"), to allegedly aggrieved persons prior to their receipt of their initial payment.  After receipt of executed Releases, the Administrator shall promptly deliver initial payments to those persons in the amounts determined by the United States as described in Paragraph 24.  No release shall be required to receive subsequent payments from the Settlement Fund.  The Administrator's identification and payment responsibility may be implemented on a rolling basis with approval from the United States.  The Administrator's contract shall require the Administrator to set reasonable deadlines, subject to approval of the United States, for distribution of compensation to aggrieved persons after each deposit into the Settlement Fund and for each check to be presented for payment or become void.  The Administrator's contract shall also require the Administrator to keep updated records on the mailing address of each allegedly aggrieved person until the final payments from the Settlement Fund are made and make its best efforts, using all reasonable methods regularly used by companies that administer litigation and government

enforcement settlement funds, to locate each identified allegedly aggrieved person for whom it loses contact after making the initial or any subsequent payment.

26.     Payments from the Settlement Fund to allegedly aggrieved persons shall be subject to the following conditions, provided that the details in administration of the Settlement Fund set forth in Paragraphs 23-25, including time deadlines, can be modified by agreement of the parties and without further Court approval:

a.     No allegedly aggrieved person shall be paid any amount from the Settlement Fund until he or she has executed and delivered to the Administrator a Release; and

b.     The total amount paid by GFI collectively to the allegedly aggrieved persons shall not exceed the amount of the Settlement Fund, including accrued interest and excluding payment of the civil penalty to the United States.

27.     All money not distributed to allegedly aggrieved persons from the Settlement Fund, including accrued interest, or paid to the United States as a civil penalty, shall be distributed to qualified organization(s) that provide services including credit and housing counseling (including assistance in obtaining loan modification and preventing foreclosure), legal representation of borrowers seeking to obtain a loan modification or to prevent foreclosure, financial literacy, and other related programs targeted at African-American and Hispanic potential and former homeowners in communities where GFI has had the highest volume of lending to African-American or Hispanic borrowers during the past seven years.  Recipient(s) of such funds must not be related to GFI or its parent or any affiliated companies, nor may any executive of any recipient organization be related to any GFI executives or directors.  GFI will consult with and obtain the consent of the United States in selecting recipient(s) of these funds

14

and the amount to be distributed to each, and the parties shall obtain the Court's approval prior to distribution of any remainder of the Settlement Fund's assets.  GFI shall require each recipient to submit to GFI and the United States a detailed report on how funds are utilized within one year after the funds are distributed.

28.     GFI shall not be entitled to a set-off or any other reduction of the amount of payments to aggrieved persons because of any debts owed by such persons.  GFI shall also not refuse to make a payment based on release of legal claims or loan modification previously signed by an aggrieved person.

## GFI FINANCIAL ASSURANCES

29.     GFI understands that the United States has agreed to the multi-year payment of restitution based solely on sworn financial disclosure statements and other financial information that GFI provided to the United States on October 28, 2011, and on subsequent dates ("Financial Statements"), and the United States has relied on the accuracy and completeness of those Financial Statements in entering into this Order.  GFI warrants that it did not own or have an interest in any asset(s) that was not disclosed in the Financial Statements, and that it made no knowing misrepresentations in, or in connection with, the Financial Statements.  In the event the United States comes to believe in good faith that GFI made knowing misrepresentations relating to asset(s) or the monetary value of asset(s) in which GFI had an interest at the time of the Financial Statements that would increase the estimated net worth of GFI set forth in the Financial Statements by two hundred and fifty thousand dollars ($250,000) or more, GFI shall be required, upon a determination by the Court that GFI made such knowing misrepresentations, to pay within 60 days of the Court's determination (a) whatever additional funds GFI continues to owe under this Consent Order, and (b) liquidated damages of $500,000.

15

30.     Within thirty days of the effective date of this Order, and to the extent consistent with GFI's existing obligations to its warehouse lenders, GFI will provide the United States with security interests in all of GFI's unencumbered physical assets and cash in unencumbered bank accounts up to the amount then owed under paragraphs 18(b) and (c). The United States will file a UCC statement, in the form specified by the appropriate authority in the state where the property is located, reflecting these security interests in the amount of the payments owed under paragraphs 18(b) and (c). Upon further payments by GFI as contemplated under paragraphs 18(b) and (c), the United States will terminate the existing UCC statement and refile an updated UCC statement updated to reflect the amount then outstanding.

## COMPLIANCE MONITORING

31.     For the duration of this Order, GFI shall retain all records relating to its obligations hereunder as well as its compliance activities as set forth herein. The United States shall have the right to review and copy such records upon request and after reasonable notice, including loan files and electronic data for loans secured by residential real estate made during the duration of the Order.

32.     GFI shall provide the United States the data on its lending that is submitted to the Federal Financial Institutions Examination Council ("FFIEC") pursuant to the Home Mortgage Disclosure Act and the Community Reinvestment Act. The data will be provided in the same format in which it is presented to the FFIEC, within 30 days of its submission to the FFIEC each year, for the duration of the Order, including the record layout.

33.     In addition to the submission of any other plans or reports specified in this Order, GFI shall submit semi-annual reports to the United States on its progress in completing the requirements of this Order. Each such report shall provide a complete account of GFI's actions to comply with each requirement of this Order during the previous 6 months, an objective

16

assessment of the extent to which each quantifiable obligation was met, an explanation of why any particular component fell short of meeting its goal for the previous 6 months, and any recommendations for additional actions to achieve the goals of the Order. GFI shall submit its first report no later than 180 days after the Effective Date of the Order, and every 180 days thereafter for so long as the Order is in effect.

34.     All material required by this Order to be sent to counsel for the United States must be sent by commercial overnight delivery service addressed as follows: (1) Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street NW, Suite 7002, Washington, DC 20006, Attn: DJ 188-51-10, or by facsimile to 202-514-1116; and (2) Chief, Civil Rights Unit, U.S. Attorney's Office for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, New York 10007; or (3) as otherwise directed by the United States.

## DURATION OF THIS ORDER

35.     Unless otherwise extended, this Order shall remain in effect for four years and six months after its entry. The Court shall retain jurisdiction for the duration of this Order to enforce the terms of this Order, after which time the case shall be dismissed with prejudice. Notwithstanding the foregoing, this Order may be extended further upon motion of the United States to the Court, for good cause shown.

36.     Any time limits for performance fixed by the Order may be extended by mutual written agreement of the parties. Except as provided by Paragraph 26, other modifications to this Order may be made only upon approval of the Court, upon motion by either party.

## MISCELLANEOUS PROVISIONS

37.     This Order shall be binding on GFI, including all its officers, employees, agents, assignees, and successors in interest, and all those in active concert or participation with any of them in the origination or pricing of mortgage loans.  In the event GFI seeks to transfer or assign all or part of its operations, and the successor or assign intends on carrying on the same or similar use, as a condition of sale, GFI shall obtain the written accession of the successor or assign to any obligations remaining under the Order for its remaining term.

38.     Nothing in this Order shall excuse GFI from compliance with any currently or subsequently effective provision of law or order of a regulator with authority over GFI that imposes additional obligations on GFI.

39.     In the event that any disputes arise about the interpretation of or compliance with the terms of this Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution.  If the United States believes that GFI has violated any provision of this Order, it will provide GFI written notice thereof and allow 30 days to resolve the alleged violation before presenting the matter to this Court.  In the event of either a failure by GFI to perform in a timely manner any act required by this Order or an act by GFI in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity.

40.     GFI's compliance with the terms of this Order shall fully and finally resolve all claims by the United States Attorney General and the United States Secretary of Housing and Urban Development related to GFI's discriminatory conduct in violation of the FHA and ECOA as alleged in the Complaint in the origination of loans between January 1, 2005, and December 31, 2009, including all claims for equitable relief and monetary damages and penalties.  The

18

Order does not release claims for practices not addressed in the Complaint's allegations, including claims that may be held or are currently under investigation by any federal agency, or any claims that may be pursued or actions that may be taken by any executive agency established by 12 U.S.C. § 5491 or the appropriate Federal Banking Agency, as defined in 12 U.S.C. § 1813(q), against GFI, any of its affiliated entities, and/or any institution-affiliated party of GFI, as defined in 12 U.S.C. § 1813(u), pursuant to 12 U.S.C. § 1818 or any other statute or regulation. This Order does not resolve and does not release claims other than claims for discrimination.

41.     The parties agree that, as of the date of entry of this Order, litigation is not "reasonably foreseeable" concerning the matters described in the Order. To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in the Order, the party is no longer required to maintain such a litigation hold.

42.     Each party to this Order shall bear its own costs and attorneys' fees associated with this litigation.

43.     The individuals signing this Order on behalf of GFI represent and warrant that they are authorized to execute this Order.  The United States' signatories represent that they are signing this Order in their official capacities and are authorized to execute this Order.

SO ORDERED, this 27ᵗᵉ day of _August_, 2012.

_____
Hon. Katherine B. Forrest
United States District Judge

The undersigned hereby apply for and consent to the entry of this Order:

**For Plaintiff United States of America:**

PREET BHARARA
United States Attorney
Southern District of New York

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Housing and Civil Enforcement Section
JON M. SEWARD
Deputy Chief
Civil Rights Division
Housing and Civil Enforcement Section

_____
DAVID J. KENNEDY
JEAN-DAVID BARNEA
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Phone: (212) 637-2733/2679
Fax: (212) 637-0033

_____
SAMEENA SHINA MAJEED
BURTIS M. DOUGHERTY
DANIEL P. MOSTELLER
Trial Attorneys
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W. – NWB
Washington, D.C. 20530
Phone: (202) 514-4713
Fax: (202) 514-1116

20

**For Defendant GFI Mortgage Bankers, Inc.:**

ANDREW L. SANDLER
KIRK D. JENSEN (*pro hac vice*)
ANDREW R. LOUIS (*pro hac vice*)
BuckleySandler LLP
1250 24th Street NW, Suite 700
Washington  DC 20037
Phone: (202) 349-8000
Fax (202) 349-8080

ABRAHAM EISNER
Executive Vice President
GFI Mortgage Bankers, Inc.

<u>**APPENDIX A**</u>

# We do Business in Accordance with Federal Fair Lending Laws

## UNDER THE FAIR HOUSING ACT AND THE EQUAL CREDIT OPPORTUNITY ACT, IT IS ILLEGAL TO DISCRIMINATE IN ANY CREDIT TRANSACTION:

> **On the basis of race, color, national origin, religion, sex, familial status, handicap, marital status, or age;**

> **Because income is from public assistance; or**

> **Because a right has been exercised under the Federal Consumer Credit Protection Laws.**

## IF YOU BELIEVE YOU HAVE BEEN DISCRIMINATED AGAINST, YOU SHOULD CALL:

**United States Department of Justice Civil Rights Div.:  1-800-896-7743 or
United States Attorney's Office Civil Rights Div.: 212-637-0840 or
U.S. Department of Housing and Urban Development: 1-800-669-9777 or
Consumer Financial Protection Bureau: 1-855-411-2372**

### Appendix B

I hereby acknowledge that I have received and read a copy of the Consent Order entered in United States v. GFI Mortgage Bankers, Inc., and the current loan policies of GFI Mortgage Bankers, Inc.  I have had the opportunity to ask questions and obtain answers to them and I understand my fair lending obligations under the Order and those policies.

_____

[Signature]

_____

[Print Name]

_____

[Job Title]

_____

[Date]

## __Appendix C__

I hereby acknowledge that on _____, I attended the fair lending

training program provided to GFI employees and agents by _____.

During the training, I received information about my fair lending obligations under the terms of

the Consent Order entered by the court in United States v. GFI Mortgage Bankers, Inc., GFI's

current lending policies, and relevant federal, state, and local laws.  I had the opportunity to ask

questions and to receive answers to them.  I understand my fair lending obligations under that

Order, GFI's lending policies, and those laws.


_____

[Signature]

_____

[Print Name]

_____

[Job Title]

_____

[Date]

## APPENDIX D

### Release

In consideration for the parties' agreement to the terms of the Consent Order entered in

United States v. GFI Mortgage Bankers, Inc., (S.D.N.Y.), and GFI's payment to me of

$_____, pursuant to the Consent Order, I hereby release and forever discharge all

claims, accruing prior to the entry of the Consent Order, related to the allegations of housing and

credit discrimination in the origination of loans secured by residential real estate at issue in the

litigation referenced above that I may have against GFI, all related entities, parents, predecessors,

successors, subsidiaries, and affiliates, and all of their past and present directors, officers, agents,

managers, supervisors, shareholders, and employees and their heirs, executors, administrators,

successors, or assigns.  I understand that the total payment amount stated above will be paid to

me from the Settlement Fund established pursuant to the Consent Order on the following

schedule:

[insert payment schedule for borrower]


Executed this _____ day of _____, 2013.


_____
Signature

_____
Print Name

_____

_____
Address